**IT IS ORDERED as set forth below:**



**Date: March 30, 2023**

*Susan D. Barrett*
_____
United States Bankruptcy Judge
Southern District of Georgia

---

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Statesboro Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 Case |
| SUE CAROL KNIGHT, d/b/a MARTHA'S | ) | No. <u>15-60110</u> |
| KITCHEN OLD FASHIONED CAKES | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| SUE CAROL KNIGHT, | ) | |
| | ) | Adversary Proceeding |
| Plaintiff | ) | Number <u>17-06006</u> |
| | ) | |
| v. | ) | |
| | ) | |
| PEOPLES BANK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

<u>**OPINION AND ORDER**</u>

Before the Court is Sue Carol Knight's ("Knight" or "Debtor") complaint seeking damages against Peoples Bank for

purported violations of the §524[1] discharge injunction.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (O) and the Court has jurisdiction under 28 U.S.C. §1334.  Based upon the evidence presented at trial, the Court finds Peoples Bank did violate the discharge injunction, but Debtor failed to carry her burden to prove her damages.

### FINDINGS OF FACT

Years ago, Debtor d/b/a Martha's Kitchen obtained a U.S. Small Business Administration ("SBA") loan from Peoples Bank to purchase baking equipment for her business.  Dckt. No. 107, Tr. 13:1-16.  She testified that she used the loan proceeds to purchase baking equipment for Martha's Kitchen and provided copies of purchase receipts to Peoples Bank for its records.  Dckt. No. 107, Tr. 18:15-19:11.  To secure this loan, she granted Peoples Bank a security interest in:  equipment, fixtures, inventory, accounts, instruments, chattel paper, general intangibles, documents, deposit accounts, and investment property, now owned or hereafter acquired. Def. Ex. No. 2.

### Repossession.

Ultimately, Knight fell behind on her loan payments and

---

[1] Unless otherwise noted all statutory references are to Title 11 of the U.S. Code.

bills and filed bankruptcy listing the debtor as Knight d/b/a Martha's Kitchen.[2] She consented to granting Peoples Bank relief from the automatic stay to collect its collateral. Underlying Ch. 7 Case No. 15-60110, Dckt. No. 113 (entered April 24, 2017). Knight says she consented to the relief because she could not afford the payments and wanted to surrender the collateral back to Peoples Bank. Dckt. No. 107, Tr. 21:14-24. Knight says she closed Martha's Kitchen the first or second week of April 2017. Id. She received her chapter 7 bankruptcy discharge on April 27, 2017. Underlying Ch. 7 Case No. 15-60110, Dckt. No. 115. It is undisputed that Peoples Bank was aware she had received her discharge.

At this same time when she was struggling financially, Debtor formed a limited liability company, Martha's Legacy Old Fashioned Cakes, LLC ("Legacy"). Pl. Ex. No. 1 (formed April 18, 2017). Knight testified she rented space in a convenience store in Vidalia, Georgia (the "Legacy location") and started selling biscuits. Dckt. No. 107, Tr. 22:1-20; 31:16-32:3. She testified that she sold all her personal items from her house and used those

---

[2] In March 2015, Knight filed a chapter 13 bankruptcy, which she subsequently converted to a chapter 7 case. Underlying Ch. 7 Case No. 15-60110, Dckt. Nos. 1 and 92. The debtor is listed as "Sue Carol Knight DBA Martha's Kitchen Old Fashioned Cakes." Id., Dckt. No. 1. The parties refer to the business as "Martha's Kitchen."

AO 72A
(Rev. 8/82)

funds to purchase various baking equipment for Legacy and to secure the Legacy location. Dckt. No. 107, Tr. 22:1-20. She valued the Legacy equipment between $4,000.00 and $5,000.00. Dckt. No. 107, Tr. 50:15-51:16; Pl. Ex. Nos. 4-8.

The old business, Martha's Kitchen, was not a separate legal entity and it operated out of Debtor's house. Ch. 7 Case No. 15-60110, Dckt. No. 1. In contrast, her new business, Legacy, was a limited liability company which she operated out of the Legacy location. Pl. Ex. No. 1; Dckt. No. 107, Tr. 22:11-23:8. According to Knight, around mid-April, she told Peoples Bank that some of its Martha's Kitchen collateral —- two tables and a mixer -- had previously been at the new Legacy location but was moved back to Debtor's house.[3] Dckt. No. 107, Tr. 38:9-23; Tr. 127:12-17.

Knight testified that she had been operating Legacy for 2 or 3 weeks when representatives from Peoples Bank and the SBA came into the Legacy location to look at the Martha's Kitchen collateral. Dckt. No. 107, Tr. 32:4-33:5. She testified she informed them that Peoples Bank's collateral was at her house, and she took them there. Id. Debtor stated that while the bank officials were at her house, Chris Braddy, from Peoples Bank, asked

---

[3] According to Knight, she moved these items to the Legacy location to take photos so Legacy could obtain a business license. Dckt. No. 107, Tr. 38:9-39:11.

her if she had anyone that could help her pay the loan to which she responded no. Id., Tr. 33:10-13.

She stated the SBA representative had a list of equipment and she pointed out the various pieces of Martha's Kitchen equipment and she said that he stated the collateral was all there, but he did not check any serial numbers. Id., Tr. 33:14-34:24. Debtor testified that the list the bank and SBA representatives were using was actually the equipment list for a totally different loan that her ex-husband had with a different bank. Id., Tr. 33:1-8.

Mitch Johnson, vice president and branch manager of Peoples Bank, also was present during this inspection and testified he did not have a clear detailed list of Peoples Bank's collateral, stating, "I didn't have a list. I had some photographs that were in the loan file when the loan was made [before Johnson began working at Peoples Bank], just a general description of what we had as collateral but not a detailed serial number, itemized year model, refrigerator, what have you." Id., Tr. 135:5-13.

Johnson testified he was concerned that Peoples Bank's collateral was not secured. He testified that a cargo trailer he considered part of Peoples Bank's collateral was not secured and a generator attached to the trailer during this initial inspection was actually removed by the time the bank returned the next day to

secure the collateral.  Dckt. No. 107, Tr. 127:12-128:17.  Johnson also testified that he visited the Legacy location on a separate occasion to see if any of Peoples Bank's collateral was there. Id., Tr. 130:1-9.  At that time, he said Debtor ushered them out the door and did not let them inspect the Legacy location.  Id. Johnson stated these events along with the Debtor's acknowledgment that she had moved some of the equipment and the general nature of the collateral caused him concern about the security of the bank's collateral.  Id.

In June 2017, Peoples Bank filed a Complaint and Petition for Immediate Writ of Possession against Sue Carol Knight d/b/a Martha's Kitchen.  Def. Ex. No. 8.  The petition stated: "Defendant [Sue Knight d/b/a Martha's Kitchen] is an individual" and "Defendant [Sue Knight d/b/a Martha's Kitchen] is currently justly and truly indebted to Plaintiff in the amount of $48,539.46 principal."  Id.  It further stated Debtor has moved "the collateral to a new location without prior notice or approval" and refuses to make the collateral available for repossession and warns that without an immediate writ Debtor would have the opportunity to "steal the secured property."  Id.  The petition sought "all costs of this action be cast upon [Sue Carol Knight d/b/a Martha's Kitchen]."  Id.  In addition, the state court summons provided,

"[i]f you fail to [respond], judgment by default will be taken against you for the relief demanded in the complaint." Def. Ex. 9. The summons was prepared and filed in state court by Peoples Bank's non-bankruptcy counsel. Dckt. No. 107, Tr. 108:17-24.

In July 2017, Peoples Bank obtained the Writ of Possession. Dckt. No. 41; Dckt. No. 107, Tr. 129:14-20. After obtaining the Writ, Peoples Bank's representatives went to Debtor's home to repossess the collateral, and then went to the Legacy location and seized additional equipment they thought was included in the bank's collateral. Id., Tr. 117:12-25. Initially, Debtor was not present at the Legacy location. Id., Tr. 40:10-25. David Pylant, owner of Georgia Appliance and a friend of Debtor, testified he was present during Peoples Bank's repossession and informed the bank that some of the equipment they were seizing was his property, not Debtor's. Dckt. No. 107, Tr. 76:7-24; 78:1-24. In addition, Ms. Mikel, a Legacy employee, testified she informed Peoples Bank's representatives that their collateral was at Debtor's house, not Legacy's location. Id., Tr. 82:1-6. Knight testified that when she arrived at the Legacy location she also informed the bank that they were repossessing the wrong items. Id., Tr. 41:3-16; 48:9-17. Peoples Bank's counsel denied anyone ever spoke to him directly during the repossession about the ownership of the collateral, but

he did hear Knight state "to the world" the property was not the bank's collateral. Id. Tr. 116:6-117:7. Notwithstanding these protests, Peoples Bank seized property from the Legacy location that Peoples Bank now acknowledges was not included in its collateral. Id. Tr. 92:11-23; 95:5-9; 100:5-19.

After the repossession, Debtor filed an Answer and Counterclaim to the Writ in the Superior Court, asserting that the property seized by Peoples Bank belonged to Legacy, not Debtor and requesting "recovery of the seized property, damages for the value of the seized property, damages for replacement of the seized property, damages for loss of business of [Legacy], damages for physical damage to the [Legacy's] business premises, and damages for the violation of the discharge injunction based upon the seizure of [Legacy's] property." Dckt. No. 66, Ex. A, p. 8. Thereafter, Debtor also filed this adversary proceeding seeking turnover and these same damages for a violation of the discharge injunction. Dckt. No. 1. Peoples Bank initially asked this Court to abstain and allow the Superior Court to determine the issues pending before it, as the issue of the proper party in interest pending in the Superior Court could resolve all matters. Dckt. No. 21. After considering the matter, this Bankruptcy Court stayed this adversary proceeding and abstained on all issues except the violation of the

discharge order claim.  Dckt. No. 42.  Ultimately, the Superior Court entered an order granting Peoples Bank's Motion to Dismiss Knight's Counterclaim, concluding Knight lacked standing and was not the real party in interest to assert Legacy's damage claims. Dckt. No. 66, Ex. A, p. 9.  Then, Debtor returned to this Bankruptcy Court to pursue her discharge violation claims for her loss in Legacy, her loss of personal property, and for punitive damages.

### **Notices.**

Around the time of repossession and post-repossession, Peoples Bank generated and sent at least five post-discharge notices to Debtor and/or Debtor's counsel addressed to "Carol Sue Knight dba Martha's Kitchen."  Pl. Ex. Nos. 16-20; Dckt. No. 107, Tr. 59:20-21.  One of the notices provides that "the rate of your loan has changed" and includes the new rate, loan balance and maturity date.  Pl. Ex. No. 17.  Four of the notices state they are "a reminder that your loan payment is due on the date shown.  We would appreciate your prompt payment.  Bring this notice with you when making your payment" and the notices include:  the payment due date noting it is "past due"; the principal due and past due; the interest due and past due; the late charges; a/l due notice total due and past due; a total due; balance; maturity date; and rate. Pl. Ex. Nos. 16, 18, 19, and 20.

Knight testified she forwarded the notices to her bankruptcy counsel and knew she did not have to make any payments because she had received her discharge and knew her attorney was handling the matter. Dckt. No. 107, Tr. 60:6-24; Tr. 70:18-23. Johnson testified he first learned about the notices at his deposition taken after this adversary had been filed. Id., Tr. 134:4-21. He thought these notices were generated automatically when the loan interest rate changed and once he learned of the notices, he immediately stopped any future notices from being sent to Debtor. Id.

### CONCLUSIONS OF LAW

The issue is whether Peoples Bank's conduct violated the discharge order, and if so what damages, if any, are appropriate. As the Eleventh Circuit has explained:

> Section 524(a)(2) of the bankruptcy code provides that a discharge of debt in a bankruptcy proceeding "operates as an injunction against the commencement or continuation of . . . an act . . . to collect . . . any such [discharged] debt.". . . This injunction is enforced through section 105, whereby the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

Roth v. Nationstar Mortg., LLC (In re Roth), 935 F.3d 1270, 1275 (11th Cir. 2019)(internal citations omitted). A violation of the discharge injunction may be found if the Court finds "the objective effect of the creditor's action is to pressure a debtor to repay a

discharged debt." Id. at 1276 (citing Green Point Credit, LLC v. McLean (In re McLean), 794 F.3d 1313, 1322 (11th Cir. 2015)). Once a determination is made that a violation has occurred, the Court may hold Peoples Bank in contempt and impose civil contempt sanctions if there is "no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." Roth, 935 F.3d at 1275 (citing Taggart v. Lorenzen, __ U.S. __, 139 S.Ct. 1795, 1801 (2019)).

Debtor has the burden of proof to establish a violation of the discharge injunction by clear and convincing evidence.[4] In re McLean, 794 F.3d at 1326. "This ['clear and convincing' evidence standard] is more exacting than the 'preponderance of the evidence' standard but, unlike criminal contempt, does not require proof

---

[4] Close to trial, Peoples Bank filed a motion to dismiss this adversary proceeding on grounds that violations of the discharge injunction should be brought as a contested matter. See In re McLean, 794 F.3d at 1326 ("[g]enerally speaking, civil contempt sanctions for the violation of the discharge injunction must be sought by contested matter rather than an adversary proceeding."). This Court denied the motion to dismiss, holding the court would apply the proper clear and convincing standard of proof at trial. Dckt. No. 92 (order denying Peoples Bank's motion to dismiss); see In re McLean, 794 F.3d at 1326 (it is not reversible error to allow contempt claim to proceed as an adversary proceeding); see also Woody v. Mr. Cooper (In re Woody), 2020 WL 5551993, at *2 (analyzing the case law and concluding a contempt claim may proceed as an adversary proceeding provided the court applies the proper clear and convincing burden of proof standard).

beyond a reasonable doubt." Jove Eng'g, Inc. v. I.R.S., 92 F.3d 1539, 1545 (11th Cir. 1996)(quoting Jordan v. Wilson, 851 F.2d 1290, 1292 (11th Cir. 1988)). "Clear and convincing evidence" is evidence that "place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable.'" Colorado v. New Mexico, 467 U.S. 310, 316 (1984).

**Discharge Order.[5]**

Debtor received her discharge on April 27, 2017. Underlying Chapter 7 Case No. 15-60110, Dckt. No. 115. The discharge order provides:

> This order means no one may make any attempt to collect a discharged debt from the debtor[] personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtor[] personally on discharged debts. Creditors cannot contact the debtor[] by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.
> However, a creditor with a lien may enforce a claim against [] debtor ['s] property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

Id. It is undisputed that Debtor's personal liability on the Peoples Bank debt was discharged, and that Peoples Bank was aware

---

[5] Headings are used in this Order for organizational purposes only and the analysis and conclusions in each section apply throughout the entire opinion.

of Debtor's bankruptcy and discharge.  It also is undisputed that Peoples Bank was entitled to collect its collateral to satisfy its debt.

### Violation of Discharge Order.

The alleged post-discharge violations involve three main actions:  1) notices sent to Debtor; 2) language used in Peoples Bank's Petition for Immediate Writ of Possession and Summons; and 3) Peoples Bank's inspection and actual repossession of equipment.

### Notices.

Post-discharge, it is undisputed that Peoples Bank sent at least five notices to Debtor and/or Debtor's attorney.  Pl. Ex. Nos. 16-20.  In fact, four of these notices were sent after Peoples Bank's seizure of the property.[6]  Pl. Ex. Nos. 16, 18-20.  All of them include the purported loan balance, and four of the notices include the amount due, the due date, and state that prompt payment would be appreciated.  Id.

It is clear the objective effect of these notices was to collect the discharged debt.  They do not include a disclaimer to assure the Debtor that Peoples Bank is not pursuing her personally for this debt.  In fact, four of the notices actually remind Debtor

---

[6]  Peoples Bank seized the property on July 20, 2017.  See Dckt. No. 41.  Four of the notices were sent in 2018.  Pl. Ex. Nos. 17-20.

that her payment is due and that Peoples Bank would appreciate her prompt payment, and further direct the Debtor to include the notice when making her payment. <u>See</u> Pl. Ex. Nos. 16, 18-20. The objective effect of these notices is to collect a discharged debt. <u>See</u> <u>White-Lett v. Bank of New York Mellon Corp. et. al. (In re Lett)</u>, 635 B.R. 713, 721-22 (Bankr. N.D. Ga. 2022)(mortgage statements which did not include any disclaimer or any acknowledgment of the discharge violated the discharge injunction); <u>Cf.</u>  <u>In re Roth</u>, 935 F.3d at 1276 (finding a particular bank statement did not violate the discharge injunction explaining, "[T]he fact that the statement includes an 'amount due,' 'due date,' and statements about the negative escrow balance does not diminish the effect of the prominent, clear, and broadly worded disclaimer."). For these reasons, the Court finds Debtor has carried her burden to show these notices violated the discharge injunction. The fact that the notices were automatically generated and that Johnson had them stopped when he became aware of their existence goes to the issue of damages, not to the existence of a violation.

### **Writ Petition and Summons.**

Peoples Bank's Petition for Immediate Writ for Possession and the Summons seek for all costs to be assessed against Debtor and states that default judgment will be entered against her if she

fails to respond. Def. Ex. Nos. 8 and 9. Again, there is no disclaimer informing Debtor that these damages are not being sought against her personally. See In re Grihalva, 2013 WL 5311227 at *5-6 (Bankr. D. Nev. Sept. 3, 2013)(finding a discharge violation when the creditor's complaint sought to subject the debtor to personal liability for the indebtedness, preserved the possibility of a deficiency being sought, and failed to state that the relief was in any way limited by the debtor's discharge). While a writ of possession to collect personalty is by its nature an in-rem action, seeking costs against Debtor and a default judgment without a disclaimer has the objective effect of attempting to collect a discharged debt against Debtor personally. See In re Plummer, 513 B.R. 135, 145-46 (Bankr. M.D. Fla. 2014)(ruling that seeking attorney fees incurred in a foreclosure action violated the discharge injunction). Peoples Bank is correct that the law does not require a disclaimer, per se, but the objective effect of the language Peoples Bank used is to collect a discharged debt from the Debtor personally and violated the discharge injunction.

Post-discharge, Debtor should not have to mount a defense to avoid costs and a default judgment being assessed against her personally. Peoples Bank argues that the petition and summons language was boilerplate language on its forms, and it did not

actually intend to, nor attempt to, assess or collect costs or pursue a default judgment against Debtor personally.  However, the standard used for determining a discharge injunction violation is an objective standard, not Peoples Bank's subjective intent.  In re Roth, 935 F.3d at 1278 (a bankruptcy court need only look to the document itself to determine "whether the objective effect of [the language] is to pressure a debtor to repay a discharged debt," as subjective beliefs are irrelevant to this determination).  The objective effect of the language used in the petition and summons seeking costs and stating that a default judgment may be entered against Debtor was to collect a discharged debt, and the language needed to be modified to clearly show that Peoples Bank was not intending to collect the debt from the Debtor personally.  The fact that Peoples Bank never intended or attempted to collect the costs against Debtor goes to the issue of damages, not whether a violation has occurred.  For these reasons, the Court finds the language in the Petition and Summons violates the discharge injunction.

**Inspection/Repossession.**

Peoples Bank's inspection and seizure of property can be divided in three main categories:  Peoples Bank's comments while inspecting its collateral; its seizure of property allegedly belonging to Legacy and non-Debtor third parties; and its seizure

of property allegedly belonging to Debtor.

### Inspection.

Debtor gave credible and undisputed testimony that Peoples Bank's loan officer, Chris Braddy, asked her post-discharge if she had anyone that could help her pay the loan when she was showing Peoples Bank its collateral at her house. After considering the evidence, the Court finds this was not an informational statement informing Debtor how she could save the property, rather it was asking her if there was another source of funds to pay the discharged debt. See In re Roth, 935 F.3d at 1276 (distinguishing a legitimate informational statement from an unlawful attempt at debt collection). Like the notices and writ petition, this statement violates the discharge injunction under the objective standard as it pressures Debtor to seek assistance in paying a discharged debt. See Id. citing In re McLean, 794 F.3d at 1322 (to determine whether a communication is prohibited the court looks as to whether the objective effect is to pressure debtor to pay a discharged debt).

### Third-Party Property.

Knight also contends Peoples Bank's seizure of Legacy's and Pylant's property violates the discharge injunction. However, it is not a per se violation of the discharge injunction to seize

the property of another.  The issue is whether the objective effect of these actions pressured Debtor to repay the discharged debt.  In re McLean, 794 F.3d at 1322 ("we hold that the test for whether a creditor violates the discharge injunction under 11 U.S.C. §524(a)(2) is whether the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt, regardless of the legal entity against which the creditor files its claim.")(emphasis added); see also In re Feldmeier, 335 B.R. 807, 812 (Bankr. D. Or. 2005)(finding creditor violated the discharge injunction by leaving a collection message on the debtor's mother's answering machine); Bentley v. OneMain Fin. Grp. (In re Bentley), 2020 WL 3833069, at *6 (B.A.P. 6th Cir. July 8, 2020)("An otherwise valid exercise of a creditor's in rem rights in its collateral may violate the discharge injunction 'if the debtor proves the creditor acted in such a way as to coerce or harass the debtor improperly, i.e., so as to obtain payment of the discharged debt.'").  Debtor presented no evidence or argument that the objective effect of Peoples Bank's repossession of third-party property was to pressure or harass her into paying the discharged debt, or that she felt such pressure.  Peoples Bank had in rem rights in its collateral after the discharge and was attempting to exercise those rights when it seized property used in a bakery.  It seized the wrong

property but its in rem actions against the third-party property did not increase Debtor's liability and there is no evidence Peoples Bank threatened or pressured Debtor in personam that it would take the third-party property unless she paid the discharged debt, or that she felt such pressure. See In re McLean, 794 F.3d at 1323 (the projected increase in plan payments due to the filing of the proof of claim, "created the kind of pressure to which the statute is sensitive" regardless of the legal entity against which the creditor filed its proof of claim).

Debtor also argues that as the owner of Legacy she is entitled to collect damages because Peoples Bank's seizure of Legacy property reduced the value of her ownership interest in Legacy. However, any such claims vest in Legacy, not the Debtor and are not violations of the discharge injunction. Debtor opted to form Legacy as a limited liability company which is a separate and distinct legal entity. See Dckt. No. 66, Ex. A (Superior Court order); In re McKeever, 550 B.R. 623, 636-37 (Bankr. N.D. Ga. 2016)(an individual shareholder does not own the assets of the corporation and the bankruptcy estate will not typically include corporate assets even where corporation is owned solely by one person). Legacy was formed in April contemporaneously with Debtor receiving her discharge and Peoples Bank's attempts to repossess

its collateral.  In this proceeding and in the state court action, Debtor has used Legacy's formation and existence as a shield to Peoples Bank's attempt to repossess what it thought was its collateral.  She is now trying to use her personal loss of its value as a sword to obtain personal damages as a result of a purported discharge injunction violation.  However, as the Superior Court previously held, any claim for the loss of Legacy's property rests in Legacy, not Debtor.  Dckt. No. 66, Ex. A.

For these reasons, given the particular facts, circumstances and arguments of this case, the Court does not find the seizure of the third-party property violated the discharge injunction.  Because of its lien, the nature of this property, and Debtor's actions, Peoples Bank had an objectively reasonable basis to conclude its seizure of this property was lawful under the terms of the discharge order.  See In re Roth, 935 F.3d at 1275 (citing Taggart, 139 S.Ct. at 1801).  It turns out Peoples Bank seized the wrong property, but any claims for wrongful repossession vest in the third parties, not in Debtor's discharge injunction violation claims.

### Knight's Personalty.

Knight testified that Peoples Bank also seized her personal property not used in the operation of Martha's Kitchen or

Legacy, including a stove, refrigerator/freezer, 22 cubic foot chest freezer, microwave, pots, pans, and a baker's rack. Dckt. No. 107, Tr. 41:3-16; 48:9-17. Peoples Bank's security interest was taken in property owned by Debtor d/b/a Martha's Kitchen and included after-acquired property. Def. Ex. No. 2. The security agreement required Debtor to inform Peoples Bank if Debtor changed the type of organization or form under which it did business. Id. at ¶7. The property taken was consistent with the operation of a bakery. Debtor did not prove that the property seized was her personal property and not subject to the lien of Peoples Bank. After considering the facts and evidence in this matter and observing the parties, Debtor has not carried her burden to establish by clear and convincing evidence that this personalty was not subject to Peoples Bank's lien, and therefore has not established a violation of the discharge injunction on this issue.

**Civil Contempt Sanctions.**

Having found some discharge violations occurred, the Court turns to the issue of whether civil contempt is appropriate. In this analysis, contempt is warranted where no "fair ground of doubt" exists as to whether the creditor's conduct violated the discharge order. Taggart, 139 S. Ct. at 1799; 11 U.S.C. §105. The consideration is whether an objectively reasonable basis exists to

conclude Peoples Bank's conduct was lawful under the discharge order. Taggart, 139 S. Ct. at 1802 (a party's subjective intent does not insulate it from civil contempt if that belief is objectively unreasonable); In re Cowan, 2020 WL 7330049, at *6 (Bankr. N.D. Ga. Dec. 11, 2020)("a good-faith belief that an action taken does not violate the discharge injunction will not shield a party if the belief is not objectively reasonable."). "On the flip side of the coin, a party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction." Taggart, 139 S.Ct. at 1802. To find contempt, the Court must conclude that Peoples Bank acted "with knowledge of the [discharge] order" and that "there [was] no fair ground of doubt as to whether the order barred the party's conduct — i.e., no objectively reasonable basis for concluding that the party's conduct might be lawful." In re Cowan, 2020 WL 7330049, at *6 (quoting In re Milani, 2020 WL 5551990, at *5 (Bankr. N.D. Ga. Sept. 16, 2020)). The Eleventh Circuit has noted that this standard is a rigorous one. In re Roth, 935 F.3d at 1278. "'A debtor carries the burden of proving that the creditor committed a sanctionable violation of the discharge order,' and that the creditor should be held in contempt, by clear and convincing evidence." Berry v. Fay Serv., LLC (In re Berry), 2022 WL 4115752, at *10 (B.A.P. 6th Cir. Sept. 9, 2022).

**Knowledge and Reasonable Basis.**

As to the first element -- knowledge of the discharge order, there was no dispute that Peoples Bank was served with the order and knew of the discharge. Turning to whether there is a reasonable basis for Peoples Bank to believe the conduct that violated the discharge order was lawful, the Court finds there was no such basis when Peoples Bank took the following actions: sending the post-discharge notices; seeking costs and a default judgment against Debtor personally in its Writ of Possession proceedings; and asking Debtor if there was anyone that could help with the loan payments.

**Damages.**

"Sanctions in civil contempt proceedings may be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." In re McLean, 794 F.3d at 1323. While Peoples Bank violated the discharge injunction, Debtor failed to carry her burden to establish damages. The trial was not bifurcated[7] and Debtor did not submit any reliable evidence of any damages other than the claim related to the loss of the value of

---

[7] The parties determined bifurcation was not necessary. See Pre-Trial Order, Dckt. No. 41, p. 10.

AO 72A
(Rev. 8/82)

Legacy.  As previously discussed, any such cause of action belongs to Legacy, not Debtor.  For these reasons, compensatory damages are not appropriate in this case.  See In re Tucker, 526 B.R. 616, 622 (Bankr. W.D. Va. 2015)(Debtor failed to carry her burden to prove compensatory damages even though the creditor technically violated the discharge injunction); Nibbelink v. Wells Fargo Bank (In re Nibbelink), 403 B.R. 113, 121 (Bankr. M.D. Fla. 2009)(finding debtors failed to prove the causal connection between emotional distress and the creditor's violation of the discharge injunction, but awarding other damages debtors proved at trial); In re Driggers, 204 B.R. 70, 72 (Bankr. N.D. Fla. 1996)(while debtors proved a violation of the discharge injunction, debtors only presented evidence of actual damages of $470.00 in attorney's fees and so the court only awarded $470.00 in attorney fees).

Debtor also seeks $500,000.00 in punitive damages to deter Peoples Bank from violating the discharge injunction in the future.  Dckt. No. 1.  "In bankruptcy as well as other contexts, courts have 'traditionally been reluctant to grant punitive damages absent some showing of reckless or callous disregard for the law or rights of others.'"  In re McLean, 794 F.3d at 1325; Carter v. Guthries Motors, Inc. (In re Carter), 2018 WL 4789997, at *5 (Bankr. S.D. Ga. Sept. 29, 2018)("Such damages are awarded only where a

defendant acts with 'malicious intent to harm and . . . in arrogant defiance of federal law.'"). While Peoples Bank's conduct towards Debtor of sending the notices, seeking costs, and asking Debtor if someone could help her with the debt violated the discharge injunction, given the facts and circumstances of this case, Peoples Bank's conduct was not so reckless or callous to warrant punitive damages or other sanctions. Debtor testified she knew she did not owe the debt since she had received her discharge. She forwarded the notices to her counsel, and knew he was handling the matter. While not condoning Peoples Bank's conduct, the parties acknowledge that the bank never pursued actual costs and Johnson immediately had the notices stopped once Debtor's counsel notified him of the issue in his deposition taken after this adversary was filed. Dckt. No. 107, Tr. 134:4-11; 134:15-21. Debtor's main focus and complaint is the loss to Legacy, which given the particular facts and circumstances of this case and as previously discussed is not a violation of the discharge injunction entitling Debtor to damages. Therefore, after considering the evidence of the case, the Court does not find punitive damages or any other sanctions for violation of the discharge injunction are appropriate in this case.

For these reasons, the relief requested by Debtor is ORDERED DENIED.

**[END OF DOCUMENT]**

AO 72A
(Rev. 8/82)